# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| TEXAS A&M QUEER EMPOWERMENT COUNCIL,<br><br>*Plaintiff*,<br><br>v.<br><br>WILLIAM "BILL" MAHOMES, ROBERT L. ALBRITTON, DAVID C. BAGGETT, JOHN W. BELLINGER, JAMES R. "RANDY" BROOKS, JAY GRAHAM, MICHAEL A. "MIKE" HERNANDEZ III, MICHAEL J. PLANK, SAM TORN, and CAGE SAWYERS in their official capacities as members of the Board of Regents of the Texas A&M University System;<br><br>JOHN SHARP, in his official capacity as Chancellor of the Texas A&M University System, and<br><br>MARK A. WELSH III, in his official capacity as President of Texas A&M University, Defendants.<br><br>*Defendants*. | CASE NO. 4:25-cv-992 |

### DEFENDANTS' OPPOSED MOTION FOR STAY PENDING APPEAL

Pursuant to Federal Rule of Appellate Procedure 8(a)(1)(A), and for the reasons outlined below, Defendants WILLIAM MAHOMES, ROBERT L. ALBRITTON, DAVID C. BAGGETT, JOHN W. BELLINGER, JAMES R. BROOKS, JAY GRAHAM, MICHAEL A. HERNANDEZ III, MICHAEL J. PLANK, SAM TORN, AND CAGE SAWYERS, in their official capacities as members for the Board of Regents of Texas A&M University System; JOHN SHARP, in his official capacity as Chancellor of Texas A&M University, and MARK A. WELSH III, in his official capacity as President of Texas A&M University, move this Court to stay its preliminary injunction in this case pending Defendants'

appeal to the United States Court of Appeals for the Fifth Circuit.

## BACKGROUND

On March 24, 2025, the Court declared the Board Defendant's Resolution prohibiting certain types of drag shows on the campuses of the Texas A&M University System to be an unconstitutional restriction on speech and in violation of the First Amendment as incorporated to Texas by the Fourteenth Amendment of the United States Constitution. *See* Memorandum and Opinion, ECF No. 24; Order of Injunction, ECF No. 25. The Court ordered Defendants to permit the Draggieland event to occur on March 27, 2025, at Rudder Theatre on the Texas A&M campus in College Station. *Id.* The Court ordered that a preliminary injunction take immediate effect and remain in effect "until further order of this court." ECF No. 25. On March 28, 2025, Defendants filed a notice of appeal, ECF No. 26, and now file this motion to stay judgment pending appeal

Defendants have raised substantial arguments on the merits of the Court's judgment, and a stay pending appeal is warranted to permit the Fifth Circuit to assess the merits of the Court's rulings. A stay is also supported by the widely recognized principle that enjoining a state policy inflicts irreparable harm on the State, and that the public's interest is aligned with the State's interest and harm. Plaintiff, in contrast, will not be irreparably harmed if a stay is granted, given that its once-per-year Draggieland already occurred on March 27, 2025, and will not re-occur until Spring 2026. For these reasons, and as further set forth below, a temporary stay of the injunction while the Fifth Circuit considers the merits of this Court's judgment is warranted.

## STANDARD

Before seeking relief from the Fifth Circuit, "[a] party must ordinarily move first in the district court" for "a stay of the judgment or order" pending appeal or for "an order

suspending . . . an injunction while an appeal is pending." Fed. R. App. P. 8(a)(1). Federal Rule of Civil Procedure 62(d) similarly authorizes a court to suspend an injunction during the pendency of an appeal from a final judgment. Fed. R. Civ. P. 62(d). As the Supreme Court has repeatedly explained, there is a four-factor test that "governs a court's consideration of a motion for stay pending appeal: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *United States v. Transocean Deepwater Drilling, Inc.*, 537 F. App'x 358, 360 (5th Cir. 2013) (per curiam) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)); *accord Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott,* 734 F.3d 406, 410 (5th Cir. 2013).

These factors are not applied in "a rigid, mechanical fashion," but rather "the movant 'need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay,'" as opposed to demonstrating a likelihood of success on the merits. *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983) (per curiam) (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A June 1981)). A stay is particularly appropriate when existing case law does not provide clarity or guidance in resolving the serious legal questions involved. *See Texas v. Ysleta Del Sur Pueblo*, No. EP-17-CV-179-PRM, 2019 WL 5589051, at *1–2 (W.D. Tex. March 28, 2019) (granting stay given serious legal question raised and lack of clarity from existing precedent). Here the Court's opinion is one of three Texas District Court opinions on the subject. The District Court opinions conflict and there is no controlling Fifth Circuit opinion. A stay pending appeal "simply suspend[s] judicial alteration of the status quo," which allows "appellate court[s] to act responsibly," "bring considered judgment" to the matter, and faithfully "fulfill their role in the judicial process." *Nken*, 556 U.S. at 427, 429 (internal quotation marks omitted). Each of the foregoing factors weigh heavily in favor of Defendants, and thus the Court should grant a stay pending the decision of the Fifth Circuit.

## THE COURT'S ORDER

This Court declared that the Board's Resolution was an unconstitutional restriction on speech and preliminarily enjoined Defendants from enforcing it. The Court concluded:

- Drag shows may be protected expressive conduct. ECF 24 at 10.

- Draggieland's "performance" element is clearly intended to convey political, social, and cultural messages. *Id.* at 10-11.

- Draggieland is protected as speech and expressive conduct. *Id.* at 11.

- Rudder Theatre is a designated public forum. *Id.* at 14.

- The Board's Resolution is an unconstitutional viewpoint-based restriction. *Id.* at 18.

- There is a high likelihood that the Board's Resolution is a prior restraint on speech. *Id.* at 20.

- The Board's Resolution does not pass strict scrutiny. *Id.* at 20.

- The Board's Resolution is not narrowly tailored to further the Board's compelling interests. *Id.* at 23.

- The Board's Resolution is unconstitutionally vague. *Id.* at 23.

- The Board's Resolution constitutes an irreparable injury. *Id.* at 25.

- The balance of harms and the public interest favors an injunction against the Board's Resolution. *Id.* at 26-28.

## ARGUMENT

**I.    This case involves a serious legal question.**

When a serious legal question is involved, the movant need only present a substantial case on

the merits and show that the balance of equities weighs heavily in favor of granting a stay of judgment pending appeal. *See Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23 (5th Cir. 1992); *Baylor*, 711 F.2d at 39.

Defendants have raised a substantial case on the merits regarding the serious legal questions of what conduct may be considered expressive, whether time, place, and manner restrictions affect the tailoring of the government's interest, and whether non-expressive conduct can be combined with expressive conduct to convey First Amendment protection on the former. Correspondingly, Defendants have demonstrated a likelihood of success on the merits regarding Plaintiff's First Amendment claims. *See Ruiz*, 650 F.2d at 565; *Baylor*, 711 F.2d at 39. This Court rejected these arguments but recognized the novel and unique issues presented by this case. The Fifth Circuit has not ruled on the merits of whether a state can restrict the types of conduct prohibited by the Board's Resolution and whether policy and laws like the Board's Resolution unconstitutionally infringe on an individual's First Amendment right. Therefore, given the novel nature of Plaintiff's claims and the Defendants' significant merits arguments raising serious legal questions, this Court should stay its preliminary injunction pending appeal.

II. **Defendants are likely to succeed on the merits.**

A. **Drag shows are not inherently expressive**

Drag shows are not expressive conduct under the First Amendment, because they do not clearly seek to convey a "message," and do not, in fact, clearly convey a "message" that would be understood by observers. *Texas v. Johnson*, 491 U.S. 397, 405 (1989).

The Court argues that Draggieland is a "performance that 'includes conversations between the performer and host about what drag means to the performers,'" citing ECF No. 1, ¶ 46.

Defendants already conceded that the explicit discussion is speech and thus protected under the First Amendment. Such behavior is not prohibited under the Board's Resolution, as seen by the protests held on campus on March 6, 2025, following the cancellation of Draggieland. The Court states that neither party cites authority requiring the Court to make a distinction between the elements of Draggieland, ECF 24 at 11, but Plaintiff itself makes the distinction. *See* ECF No. 3 at 4. Defendants have pointed out that the First Amendment protection is not shared between the separate elements. *Rumsfeld v. FAIR*, 547 U.S. 47, 66 (2006).

The Court alleges that Defendants' contention "that drag shows, and Draggieland, are not expressive conduct directly contradicts the Board's simultaneous assertion that drag performances promote an ideology . . . The Board cannot assert both that the performance promotes an ideology and that it is not expressive conduct." ECF No. 24 at 10. The Opinion also cities Plaintiff's Reply Brief—ECF No. 22—at 13, which does not discuss ideology. The Court may be drawing attention to the second paragraph, where Defendants' attempts to comply with federal antidiscrimination law are discussed. Defendants' belief that certain kind of conduct creates a hostile environment for female students does not concede that Plaintiff's conduct is expressive, because it influences other students. To be expressive under *Johnson*, the intended message must match the message understood by those that view it. Here, any intended message is irrelevant to its effect on female students.

Further, Defendants at no point have argued that drag promotes an ideology but have taken the opposite position. *See* ECF No. 20 at 8-9. Defendants' "argument" regarding ideology is that the Trump/Abbott administrations may construe A&M's hosting of drag shows to be in violation of federal or state law prohibiting public funds being spent on gender ideology.

6

**B. The Board's actions were narrowly tailored to a compelling government interest.**

"Clearly, providing an effective learning environment and complying with federal antidiscrimination laws are compelling governmental interests." ECF No. 24, Memorandum and Opinion at 21. The Court viewed A&M's time, place, manner restrictions as evidence that the Board's actions were not narrowly tailored. The Court primarily takes issue with the Board's Five-Factor Test, where events held at Special Event Venues are prohibited if they: (1) involve biological males dressing in women's clothing; (2) wearing exaggerated female make up and/or exaggerated prosthetics meant to parody the female body type; (3) are open to the public; (4) involve sexualized, vulgar or lewd conduct; and (5) involve conduct that demeans women. ECF No. 24 at 22. The Court finds this not to be narrowly tailored, because an event could satisfy the test by being moved outside, where even more people might witness it. *Id.* at 22. However, the Board cannot ban this behavior from public forums like lawns on campus—the First Amendment prohibits it. The only action that the Board can take to limit such events is to prohibit them from venues over which they have more control, i.e. limited public forums like Rudder Theatre. And the Board has made any potential infringement as narrow as possible by only prohibiting those events that act egregiously enough to meet all five factors. It would be difficult to find a narrower prohibition than one that does not even ban all drag shows, but only ones in violation of existing standards.

**C. Rudder Theatre is a limited public forum, so even if the Fifth Circuit finds that Draggieland's conduct were inherently expressive, Defendants only must pass intermediate scrutiny.**

"The constitutionality of speech restrictions in a limited public forum are judged under the reasonableness standard, while speech restrictions in a traditional or designated public forum are subject to strict scrutiny." *Pro-Life Cougars v. Univ. of Houston*, 259 F. Supp. 2d 575, 581 (S.D. Tex. 2003). The Court found that Rudder Theatre has hosted a variety of speakers and performances.

7

ECF No. 24 at 4. "The necessities of confining a forum to the limited and legitimate purposes for which it was created may justify the State in reserving it for certain groups or for the discussion of certain topics." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). A&M's rules describe its limited public forums. Tex. A&M Pol'y 08.99.99.M1 (May 14, 2020). A&M also prohibits "[p]ublic behavior that is disruptive, lewd, or indecent." Texas A&M University, Student Conduct Code § 24.4.17.

### a. The Board's Resolution contains no viewpoint discrimination, so intermediate scrutiny applies.

The Court points out that it is viewpoint discrimination "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" *Heaney v. Roberts*, 846 F.3d 795, 802 (5th Cir. 2017) (citing *Rosenberger*, 515 U.S. at 829). The Court argues that Defendants position on viewpoint discrimination could justify a restraint on things such as burning the American flag, no doubt referring to *Johnson,* 491 U.S. at 405. *Johnson* is however distinguishable. In *Johnson*, the law the Supreme Court invalidated did not prohibit the conduct of flag burning. It prohibited the conduct of flag burning, when paired with an expressive message of which the state disapproved. Here, the conduct listed by the Board's Resolution is prohibited, regardless of any intended message. There is no viewpoint discrimination.

The Court points out the absence of evidence that A&M had denied a group in the past from using Rudder Theatre through its reservation system. ECF No. 24 at 12-13. There is however no case law that requires the university to grant permission to use its reservation-only facilities for groups such as Plaintiff who are in violation of posted student rules on lewdness and indecent behavior. The Court points out that when student codes of conduct conflict with the First Amendment, the First Amendment "takes precedence." ECF No. 24 at 20. While this is true, the

8

Opinion assumes without analysis that Student Conduct Code § 24.4.17 conflicts with the First Amendment, which is does not.

Rudder Theatre is operated as a limited public forum and is entitled to intermediate scrutiny

### III. Plaintiff will not be substantially injured by a stay.

Plaintiff sought injunction relief to hold Draggieland in Rudder Theatre on March 27, 2025. The injunction was granted, and Plaintiff held the event as planned. Draggieland only occurs once per year. ECF No. 24 at 23. Should the injunction be stayed pending appeal, none of Plaintiff's other events would be affected. ECF No. 21.3 at ¶ 6. Draggieland will not occur again until Spring 2026. If the Fifth Circuit has not opined on the drag issue by then, this Court can reinstate the injunction with no ill-effect on Plaintiff.

### IV. Defendants and the public interest will be irreparably injured absent a stay

When the State seeks a stay pending appeal, "its interest and harm merge with that of the public." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam) (citation omitted). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Exercising caution is especially important where the defendant is itself a state actor because of the federalism concerns attendant to a federal court intervening to grant preliminary injunctive relief against a state agency. *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 449 (5th Cir. 2022) vacated and remanded sub nom. *Moody v. NetChoice*, LLC, 603 U.S. 707 (2024).

On January 20, 2025, President Trump issued an executive order entitled *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*. Governor Abbott on January 30, 2025, issued a letter expressing support for that executive order. On February 4, 2025, the Office of Civil Rights at the Department of Education issued a "Dear

Colleague" letter stating that Title IX must be enforced consistent with President Trump's executive order. The implication being that violation of the executive order was a Title IX violation. As the Board's Resolution stated, the Texas A&M System receives significant federal funding.

The Court does not believe that President Trump's executive order relates to drag shows. ECF No. 24 at 17. The Trump Administration may make a different determination. Should it do so, A&M will be unable to provide the same level of education and activities to its students, which affects the interests of both the students and the State.

Plaintiff argued that an injunction was in the public interest because it protected their rights by "enjoining censorship." ECF No. 24 at 26. Given that Plaintiff has held their show and none of their other activities are affected, the public interest is in staying the injunction pending appeal.

## Conclusion

For these reasons, the Defendants respectfully requests this Court to Stay the Judgment pending their appeal to the Fifth Circuit.

Dated March 28, 2025.

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

Respectfully submitted.

RYAN G. KERCHER
Chief, Special Litigation Division
Texas Bar No. 24060998
SDTX No. 882329

/s/ Zachary Berg
ZACHARY BERG
Special Counsel
Tex. State Bar No. 24107706
SDTX No. 3481711

MARK A. CSOROS
Assistant Attorney General
Texas State Bar No. 24142814
SDTX No. 3896171

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Ryan.Kercher@oag.texas.gov
Zachary.Berg@oag.texas.gov
Mark.Csoros@oag.texas.gov

COUNSEL FOR DEFENDANTS

## CERTIFICATE OF CONFERENCE

I hereby certify that on March 28, 2025, I conferred with Adam B. Steinbaugh, counsel for Plaintiff, via email regarding this Motion. Plaintiff opposes the requested stay.

*/s/Zachary Berg*
ZACHARY BERG

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on March 28, 2025 and that all counsel of record were served by CM/ECF.

*/s/Zachary Berg*
ZACHARY BERG