IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TEXAS A&M QUEER EMPOWERMENT COUNCIL, <br><br> *Plaintiff*, <br><br> v. <br><br> WILLIAM "BILL" MAHOMES, ROBERT L. ALBRITTON, DAVID C. BAGGETT, JOHN W. BELLINGER, JAMES R. "RANDY" BROOKS, JAY GRAHAM, MICHAEL A. "MIKE" HERNANDEZ III, MICHAEL J. PLANK, SAM TORN, CAGE SAWYERS, JOHN SHARP, and MARK A. WELSH III, in their official capacities, <br><br> *Defendants*. | Civil Case No. 4:25-cv-992 |

**PLAINTIFF'S OPPOSITION TO MOTION FOR STAY PENDING APPEAL**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................1

    I.      The Defendants Have Not Made a "Strong Showing" of a Likelihood of Success. ......................................................................................................2

          A.    This Court faithfully applied Supreme Court precedent in rejecting Defendants' attempt to claim drag performance is not expressive. ............ 2

          B.    Defendants do not make a "strong showing" their drag ban is entitled to intermediate scrutiny. ............................................................................ 4

                1.    Defendants do not contest the Court's conclusion the drag ban is a prior restraint requiring strict scrutiny. .............................. 4

                2.    The Rudder Theatre is a designated public forum under binding precedent, given policy and practice. ................................ 4

                3.    The ban on drag performance is viewpoint discrimination the First Amendment prohibits in any public forum. ............................ 6

                4.    The ban on drag performance is not narrowly tailored, even if it were viewpoint- or content-neutral. ......................................... 8

    II.     The Preliminary Injunction Will Not Cause Irreparable Harm to Defendants, but Plaintiff Will Suffer More Than "Substantial Injury." ..................8

    III.    The Public Has a Strong Interest in Avoiding a Chilling Effect on Students' Expressive Freedom on Campus. ..........................................................10

CONCLUSION .....................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**

*Chiu v. Plano Indep. Sch. Dist.*,
    260 F.3d 330 (5th Cir. 2001) .......................................................................................... 5

*Cohen v. California*,
    403 U.S. 15 (1971) ........................................................................................................ 10

*Elrod v. Burns*,
    427 U.S. 347 (1976) ........................................................................................................ 9

*Gay Student Servs. v. Tex. A&M Univ.*,
    737 F.2d 1317 (5th Cir. 1984) ........................................................................................ 4

*Hays Cnty. Guardian v. Supple*,
    969 F.2d 111 (5th Cir. 1992) .......................................................................................... 6

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
    515 U.S. 557 (1995) ........................................................................................................ 3

*Just. for All v. Faulkner*,
    410 F.3d 760 (5th Cir. 2005) .......................................................................................... 5

*Matal v. Tam*,
    582 U.S. 218 (2017) ................................................................................................... 6, 8

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................................................... 1, 2, 9

*Pro-Life Cougars v. Univ. of Houston*,
    259 F.Supp.2d 575 (S.D. Tex. 2003) .............................................................................. 5

*Robinson v. Hunt Cnty.*,
    921 F.3d 440 (5th Cir. 2019) ...................................................................................... 6, 7

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
    592 U.S. 14 (2020) .......................................................................................................... 9

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
    515 U.S. 819 (1995) ................................................................................................... 6, 7

*Ruiz v. Estelle*,
    650 F.2d 555 (5th Cir. 1981) .......................................................................................... 8

*Ruiz v. Estelle*,
    666 F.2d 854 (5th Cir. 1982) .......................................................................................... 8

*Schacht v. United States*,
    398 U.S. 58 (1970) .................................................................................................. 3

*Se. Promotions, Ltd. v. Conrad*,
    420 U.S. 546 (1975) .................................................................................................. 3

*Speech First, Inc. v. Fenves*,
    979 F.3d 319 (5th Cir. 2020) ............................................................................. 2, 10

*Texas v. Johnson*,
    491 U.S. 397 (1989) .................................................................................................. 3

*Texas v. U.S.*,
    787 F.3d 733 (5th Cir. 2015) ............................................................................... 2, 8

*Vote.Org v. Callanen*,
    39 F.4th 297 (5th Cir. 2022) .................................................................................... 1

*Woodlands Pride, Inc. v. Paxton*,
    694 F.Supp.3d 820 (S.D. Tex. 2023) ....................................................................... 2

**Statutes**

Tex. Educ. Code
    § 51.9315(b)(1) ....................................................................................................... 10

**Other Authorities**

Press Release, Office of Att'y Gen. Ken Paxton, *Attorney General Ken Paxton Continues
    to Defend Texas A&M's Ban on Obscene and Illegal Drag Shows* (Apr. 1, 2025) ............ 7

iii

**INTRODUCTION**

Defendants' motion to stay this Court's preliminary injunction against Texas A&M's prior restraint on "offensive" drag performances falls far short of the strong showing necessary for the exceptional relief they seek. (Mem. in Supp. of Mot. for Stay Pending App. ("Mot."), ECF No. 27; Memorandum and Opinion ("Mem. Op."), ECF No. 24). Defendants retreat from their formal resolution (denouncing drag performance as inconsistent with the University's "values") and, though claiming to present a "serious legal question," ignore the binding authority undergirding this Court's well-reasoned analysis. Their attempt to plot a circuitous route around the First Amendment fails. Defendants even manage to concede that drag performance is expressive *outside* while somehow claiming it can be swept from indoor theater stages. (Mot. 7).

The Court should reject their motion. Not only are Defendants unable to make a strong showing they are likely to succeed on the merits, but the remote possibility the federal government "may" view drag performance as promoting "gender ideology" does not present the type of imminent irreparable harm that might justify an extraordinary stay. And even if it did, allowing the Defendants to again police speech for ideological purity would renew irreparable harm to free expression where it should be most protected: the college campus.

**ARGUMENT**

Defendants are not entitled to the "extraordinary relief" of a stay pending appeal, *Vote.Org v. Callanen*, 39 F.4th 297, 300 (5th Cir. 2022), because they cannot satisfy any of the four factors required for a stay. *Nken v. Holder*, 556 U.S. 418, 426 (2009) (identifying factors necessary for a stay pending appeal). Most importantly, they fail to make the requisite "strong showing" that they are likely to succeed on the merits, offering no response to the binding precedent this Court cited in holding Plaintiff's First Amendment claims are likely to succeed. *See id.* at 426, 434 (the

1

"critical" likelihood of success factor requires more than a "mere 'possibility' of success"). Nor do Defendants establish the "critical" irreparable-harm factor, as the unlikely chance that the federal government "may" extend an executive order to reach drag performances (Mot. 10) shows no more than "some possibility of irreparable injury," which does not suffice. *Nken*, 556 U.S. at 434–35 (cleaned up).

Staying the preliminary injunction will instead upset the status quo and cause irreparable harm to Plaintiff by forcing students to seek injunctive relief again to begin planning the next *Draggieland*—meaning a stay will do more than "substantially injure" Plaintiff. *See id.* at 426 (third factor considers whether a stay will harm parties other than movant). Stays pending appeal are especially disfavored where the injunction "merely maintains the status quo" and the first three factors favor the plaintiff. *Texas v. U.S.*, 787 F.3d 733, 768 (5th Cir. 2015). Here, the status quo— and the public interest—is in freedom of expression unfettered by administrators' adoption of a new policy embodying their subjective determination that student expression might cause offense to others. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 339 (5th Cir. 2020).

**I.    The Defendants Have Not Made a "Strong Showing" of a Likelihood of Success.**

For the same reasons the Court granted the preliminary injunction, it should hold that Defendants have not made a "strong showing" they are likely to succeed. *Nken*, 556 U.S. at 426.

**A.    This Court faithfully applied Supreme Court precedent in rejecting Defendants' attempt to claim drag performance is not expressive.**

Building on the body of cases recognizing that drag performance is expressive, this Court correctly found Plaintiffs' *Draggieland* performance "clearly intended to convey 'political, social, and cultural messages.'" (Mem. Op. at 10–11 (quoting, in part, *Woodlands Pride, Inc. v. Paxton*, 694 F.Supp.3d 820, 844 (S.D. Tex. 2023)). The Court faithfully applied *Hurley* and *Southeastern Promotions*, reasoning that both *Draggieland*'s "theatrical performance and the explicit discussion

2

of the intended message" are protected by the First Amendment. (Mem. Op. at 10–11 (applying *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557 (1995) & *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975)). The Court also correctly rejected Defendants' contention that *Texas v. Johnson* requires expressive conduct to convey a "particularized message" to receive First Amendment protection, as the later-decided *Hurley* clarified that a "narrow, succinctly articulable message" is not a prerequisite. (Mem. Op. at 9–10 (citing *Texas v. Johnson*, 491 U.S. 397, 405 (1989), and quoting *Hurley*, 515 U.S. at 569)). And the Court properly rejected Defendants' attempt to divide the theatrical performance into isolated components, citing the *Southeastern Promotions* Court's refusal to do the same. (Mem. Op. at 11 (citing *Se. Promotions*, 420 U.S. at 587–88 (theater "frequently mixes speech with live action or conduct.")).

And Defendants do not contend this Court erred in relying on or applying *Hurley* and *Southeastern Promotions*. If the Defendants believe this Court's reasoned application of *Hurley* and *Southeastern Promotions* (Mot. at 3) poses a "serious legal question," they do not ask or answer it: their motion does not reference either *Hurley* or *Southeastern Promotions*. Further, in attempting to explain why Texas A&M's policy bans drag performances only in indoor but not outdoor venues, Defendants admit they cannot ban drag performances "from public forums like lawns on campus" because "the First Amendment prohibits" them from doing so. (Mot. 7). That concession proves too much. If Defendants cannot ban drag performances *outside*, that necessarily means they have sufficient expressive elements to fall within the First Amendment. In other words, if viewers of an outdoor drag performance would understand it to be expressing something, a seated theatre audience would doubtless understand the show to be a form of expression. *See, e.g.*, *Schacht v. United States*, 398 U.S. 58, 61–62 (1970) (an "crude and amateurish … street skit" was expressive because "outdoor theatrical performances" have for "time immemorial" played an

3

"important part in … entertainment and education").

Each of Defendants' refusal to grapple with binding precedent and their concession that drag performance is expressive conduct is alone enough to preclude a stay, and in combination they are fatal to the motion. Defendants are not entitled to the extraordinary relief they now seek.

### B.  Defendants do not make a "strong showing" their drag ban is entitled to intermediate scrutiny.

Defendants cannot avoid the rigor of strict scrutiny—or overcome it. They fail to address the Court's reasoning concerning prior restraint and public forum analysis, fail in their attempt to recast the ban as a time, place, or manner restriction, and fail in boldly insisting a ban on "offensive" expression is not viewpoint-discriminatory.

#### 1.  Defendants do not contest the Court's conclusion the drag ban is a prior restraint requiring strict scrutiny.

The Defendants' attempt to shift the goalposts from strict to intermediate scrutiny fails out of the gate because they refuse to address how it constitutes a prior restraint, as this Court correctly held. (Mem. Opp. at 19). The consequence of that holding is that there is a "heavy presumption" against the ban's constitutionality. *Gay Student Servs. v. Tex. A&M Univ.*, 737 F.2d 1317, 1325 (5th Cir. 1984) (quotation omitted). Defendants failed to respond to that argument in opposing Plaintiff's preliminary injunction motion, and they fail to address it again now that it is this Court's holding. (*See* Mem. in Opp'n to Mot. for TRO & Prelim. Inj., ECF No. 20 at 11 (solitary reference to "prior restraint") & Mot. at 4 (solitary reference to "prior restraint")). This repeated refusal to rebut the point waives the argument—and needless to say, falls far short of justifying extraordinary relief.

#### 2.  The Rudder Theatre is a designated public forum under binding precedent, given policy and practice.

The Defendants' efforts to reclassify the Rudder Theatre as a limited (not designated)

4

public forum fare no better and thus cannot support a stay. (Mot. at 7–9). As required by binding precedent, this Court analyzed Texas A&M University's intent to determine the forum's status by looking to its policies and practices. (Mem. Op. at 12–13 (citing *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 346 (5th Cir. 2001)); *see also Pro-Life Cougars v. Univ. of Houston*, 259 F.Supp.2d 575, 582 (S.D. Tex. 2003) (holding public university creates a designated public forum when "by policy and practice" it opens an area to general use by student organizations). The Court rightly observed Texas A&M policy makes the Rudder Theatre available for student organizations' use and prohibits administrators from considering the "content or viewpoint" in evaluating reservation requests. (Mem. Op. at 12–13 (citing Tex. A&M Pol'y 08.99.99.M1, "Reservation Procedures" (rev. June 25, 2024). By offering students that "broad … guarantee of expressive freedom" coupled with "minimal" limits on speech in the Rudder Theatre, Texas A&M created a designated public forum. *Just. for All v. Faulkner*, 410 F.3d 760, 768–69 (5th Cir. 2005). As the Court also rightly observed, student use of these spaces is consistent with that broad guarantee of free expression, considering the variety of performances in campus venues. (Mem. Op. at 13–14 (citing "plays, musicals, beauty pageants, and speakers," as well as the "other theatrical productions, including those with mature themes," that Rudder Theatre has hosted).

Defendants do not contest any of this. Rather, ignoring policy and practice, they simply contend that a general prohibition on disruptive, lewd, or indecent *conduct* anywhere on campus reduces the Rudder Theatre to a limited public forum. (Mot. 7–8). But the Fifth Circuit squarely rejected that proposition in *Justice for All*, holding a university's "comprehensive" time, place, and manner regulations did not shift a campus forum's classification from designated to limited. 410 F.3d at 768–69.[1] In any event, taken to its logical conclusion, a campus-wide prohibition

---

[1] Defendants' similar suggestion that they are entitled to the more deferential standard afforded to time, place, or manner restrictions (Mot. 7) fails for the same reason. A regulation on the time, place, or manner of speech must be

5

would reduce *every* space on campus to a limited public forum, including the outdoor spaces Defendants acknowledge are traditional or designated public fora. (*See* Mot. at 7).

In short, Rudder Theatre's status as a designated public forum means strict scrutiny applies.

### 3. The ban on drag performance is viewpoint discrimination the First Amendment prohibits in any public forum.

Whether Rudder Theatre is a limited or designated public forum, the drag ban is unconstitutional because the First Amendment prohibits viewpoint discrimination in any public forum. *Matal v. Tam*, 582 U.S. 218, 243 (2017). A policy is viewpoint-discriminatory "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995); *see also Robinson v. Hunt Cnty.*, 921 F.3d 440, 447 (5th Cir. 2019) ("[C]ensorship based on a state actor's subjective judgment that the content of protected speech is offensive or inappropriate is viewpoint discrimination."). A regulation is also viewpoint-discriminatory when its application depends on the "particular views taken by speakers on a subject." *Rosenberger*, 515 U.S. at 829. As the Court recognized, the Defendants' policy is viewpoint-discriminatory in both of those independent respects. (Mem. Op. at 14–15).

Defendants now claim they "at no point have argued that drag performance promotes an ideology," asserting instead that they have "taken the opposite position." (Mot. 6). That "opposite position," however, is that *someone else*—the "Trump/Abbott administrations"—"may construe" drag performances to promote "gender ideology." (Mot. 6). But the government "may not insulate a law from charges of viewpoint discrimination by tying censorship to the reaction" of others. *Matal*, 582 U.S. at 250 (Kennedy, J., concurring). Even if it could, the Defendants' hypothesis

---

both content-*neutral* and narrowly tailored. *Hays Cnty. Guardian v. Supple*, 969 F.2d 111, 116 (5th Cir. 1992). The Defendants' ban on drag performances is necessarily content-based, applying only to "shows" that "parody" and "demean[]," including through the performers' particular "clothing" and "make-up." ECF No. 1-1 at 1.

remains dubious, as Executive Order 14168 is not plausibly relevant to drag performances at public universities. (Mem. Op. at 16–17). Nor do subsequent developments justify an extraordinary stay, as the Defendants do not identify any complaint or regulatory action following Plaintiff's 2025 performance. If anything, shortly after Defendants filed this motion urging they are not concerned by "ideology," Texas Attorney General Ken Paxton issued a press release admitting the motion's goal: to stop "a woke agenda" advanced by "offensive" drag shows.[2]

Defendants also cannot escape the drag ban resolution's plain language for two reasons. First, it shows Defendants' rationale rests not solely on executive orders but on *Defendants'* beliefs. Even were every reference to "ideology" deleted from its text, the resolution still invokes drag performances' alleged incompatibility with Texas A&M's "values"—not the values of the Trump administration. (ECF No. 1-1 at 1). The resolution also invokes the Regents' belief that drag performances are "offensive" because they are a "parody" that "demeans women." (ECF No. 1-1 at 1). That meets the test for viewpoint discrimination. *Rosenberger*, 515 U.S. at 829 (defining viewpoint discrimination as when the "specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction"); *Robinson*, 921 F.3d at 447 (defining viewpoint discrimination as a "subjective judgment that the content of protected speech is offensive or inappropriate"). Second, even setting aside Defendants' subjective motivation, the policy is viewpoint-discriminatory on its face in prohibiting shows that "parody" women while performances that administrators believe show respect for women—like beauty pageants—are permitted. (ECF No. 1-1 at 1). Defendants cannot be likely to succeed on the merits in the face of their viewpoint discrimination against drag performances.

---

[2] Press Release, Office of Att'y Gen. Ken Paxton, *Attorney General Ken Paxton Continues to Defend Texas A&M's Ban on Obscene and Illegal Drag Shows* (Apr. 1, 2025), https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-continues-defend-texas-ams-ban-obscene-and-illegal-drag-shows [https://perma.cc/W2JX-7RGH].

    4. <u>The ban on drag performance is not narrowly tailored, even if it were viewpoint- or content-neutral.</u>

  Defendants' efforts to recast their vague definition of "Drag Show" as narrowly tailored also fail. As the Court observed, the policy fails to define "vulgar," "sexualized," or "lewd," leaving students to guess what the policy prohibits. (Mem. Op. at 23). Defendants' motion provides no further guidance and does not address the Court's determination the ban is unconstitutionally vague. (*See* Mot. at 4 (solitary reference to "vague")). The ban is not narrowly tailored in any event because it suppresses protected speech on the basis that it causes offense. Not only is that viewpoint discrimination, *see Matal*, 582 U.S. at 243, there is, as the Court observed, a "simple remedy" for those who find a performance offensive: "don't go." (Mem. Op. at 2).

****

  All told, there is no basis for Defendants' insistence they are entitled to extraordinary relief under a deferential standard because they raise "serious legal questions." (Mot. 4–5). They have not, but rather fail to grapple with this Court's well-reasoned analysis while ignoring the record. Even if Defendants had raised "serious legal questions," likelihood of success remains a prerequisite unless *all* the other factors—irreparable harm to the movant, lack of substantial harm to the respondent, and the public interest—are "heavily tilted" in favor of the movant. *Ruiz v. Estelle*, 666 F.2d 854, 856–57 (5th Cir. 1982) (*Ruiz II*). But each of those factors favors Plaintiff.

**II.** **The Preliminary Injunction Will Not Cause Irreparable Harm to Defendants, but Plaintiff Will Suffer More Than "Substantial Injury."**

  Granting Defendants' motion will not serve the purpose of a stay, which is to "maintain the status quo pending a final determination on the merits." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981) (per curiam) (*Ruiz I*). A stay pending appeal is "far from justified" when the injunction "merely maintains the status quo" and the first three factors favor the plaintiff. *Texas v. U.S.*, 787 F.3d at 768. That is precisely what this Court's preliminary injunction does: It bars Defendants

from enforcing a ban on performances that have occurred on Texas A&M campuses for years without incident, maintaining a years-long status quo.

The motion also shows no change in circumstances that justifies an extraordinary reversal. The Court already found the Defendants' undifferentiated concern about an executive order unpersuasive (Mem. Op. at 5, 16, 28), and they only speculate the federal government "*may* make a different determination" (Mot. 10 (emphasis added)). However, "simply showing some possibility of irreparable injury fails to satisfy" the "critical" irreparable harm required for a stay pending appeal. *Nken*, 556 U.S. at 434–35 (cleaned up and citation omitted). Even if the federal government did take steps suggesting that a drag performance violates federal law, lifting the preliminary injunction now would make no difference: Draggieland 2025 has already taken place. If circumstances change, Defendants can seek relief at *that* juncture—an obligation they would have for any prior restraint, even without this preliminary injunction. *Se. Promotions*, 420 U.S. at 562 (prior restraints require the government, not the speaker, to seek prompt judicial review).

As a practical matter, it is unlikely Defendants will face any burden, let alone the irreparable harm necessary for a stay. With the end of the academic year and summer vacation approaching, it is unlikely any student group will seek to hold a drag performance in the coming months. At the same time, Plaintiff—not the Defendants—will suffer irreparable harm because reinstatement of the ban would serve no purpose but to chill students from planning future drag performances given they would not be certain the ban would be lifted in time again. And that includes Plaintiff, if it were required to seek a preliminary injunction again to begin planning the next iteration of *Draggieland*. Such loss of First Amendment freedoms for *any* period is "unquestionably" irreparable. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)).

**III.     The Public Has a Strong Interest in Avoiding a Chilling Effect on Students' Expressive Freedom on Campus.**

A stay is also not warranted because there is a strong public interest, as the Court's opening to its opinion recognized, in vigilance against campus censorship given the recent efforts "from all sides of the political spectrum to disrupt or prevent students, faculty, and others from expressing opinions and speech that are deemed, or actually are, offensive or wrong." (Mem. Op. at 1). That is why the Fifth Circuit has counseled courts to "be especially vigilant against assaults on speech" on college campuses. *Speech First*, 979 F.3d at 339. Given this, the Defendants' ban undermines the public interest, as would staying the preliminary injunction against its enforcement.

At its core, Defendants claim is the Board of Regents possesses authority to unilaterally, and at a moment's notice, ban any performance from every Texas A&M campus if some official—whether the President of the United States, the Governor of Texas, or the Board of Regents' members—disagrees with the expression. That claim of authority to subjectively police speech is *contrary to* the freedom of expression that is central to the mission of a public university, as the First Amendment, Texas state law, and university policy recognize. *Cohen v. California*, 403 U.S. 15, 25 (1971) (government officials are inherently incapable of separating the offensive from the inoffensive); Tex. Educ. Code § 51.9315(b)(1) (freedom of expression is "central to the mission" of Texas A&M). This Court's vigilance against officials' efforts to check student expression at the campus gate serves the public interest, and reinstating the ban would undermine it.

## CONCLUSION

This Court should deny the request for extraordinary relief of a stay pending appeal.

Dated: April 18, 2025                                        Respectfully submitted,

/s/ JT Morris
JT Morris (Tex. Bar No. 24094444; S.D. Tex. Bar No. 3163670)

FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION (FIRE)
(215) 717-3473
700 Pennsylvania Ave., Suite 340
Washington, DC 20003
jt.morris@thefire.org

Adam Steinbaugh (Cal. Bar No. 304829)*
Jeffrey D. Zeman (Mich. Bar No. P76610)*
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION (FIRE)
510 Walnut St., Suite 900
Philadelphia, PA 19106
adam@thefire.org
jeff.zeman@thefire.org

*Admitted *pro hac vice*.

**Attorneys for Plaintiff**
**Texas A&M Queer Empowerment Council**

11

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 18th day of April, 2025, a true and correct copy of Plaintiff's reply memorandum was served to all counsel of record via the CM/ECF system.

/s/ *JT Morris*