**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

TEXAS A&M QUEER EMPOWERMENT COUNCIL,
*Plaintiffs*,

v.

WILLIAM "BILL" MAHOMES, ROBERT L. ALBRITTON, DAVID C. BAGGETT, JOHN W. BELLINGER, JAMES R. "RANDY" BROOKS, JAY GRAHAM, MICHAEL A. "MIKE" HERNANDEZ III, MICHAEL J. PLANK, SAM TORN, and CAGE SAWYERS in their official capacities as members of the Board of Regents of the Texas A&M University System;

JOHN SHARP, in his official capacity as Chancellor of the Texas A&M University System, and

MARK A. WELSH III, in his official capacity as President of Texas A&M University, Defendants.
*Defendants.*

CASE NO. 4:25-cv-992

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY PRELIMINARY INJUNCTION**

## Table of Contents

Introduction ..... 1
Background ..... 1
Argument ..... 1
I. The balance of equities favors a stay. ..... 2
   A. Plaintiff concedes it will not be injured by a stay. ..... 2
   B. An unnecessary injunction harms Texas's sovereignty. ..... 2
   C. Defendants have a continuing interest in complying with federal antidiscrimination law. ..... 3
   D. Judicial economy supports a stay. ..... 4
II. Defendants' have made a "strong showing" of success on the merits. ..... 4
   A. Defendants are entitled to intermediate scrutiny because the Resolution applies only to limited public forums and was viewpoint neutral. ..... 4
   B. The Resolution is narrowly tailored to protect speech while furthering a compelling government interest. ..... 5
   C. The Resolution is not an impermissible prior restraint. ..... 6
Conclusion ..... 7

## INTRODUCTION

Defendants WILLIAM MAHOMES, ROBERT L. ALBRITTON, DAVID C. BAGGETT, JOHN W. BELLINGER, JAMES R. BROOKS, JAY GRAHAM, MICHAEL A. HERNANDEZ III, MICHAEL J. PLANK, SAM TORN, AND CAGE SAWYERS, in their official capacities as members for the Board of Regents of Texas A&M University System; JOHN SHARP, in his official capacity as Chancellor of Texas A&M University, and MARK A. WELSH III, in his official capacity as President of Texas A&M University, file this reply in support of their motion to stay preliminary injunction pending their appeal to the United States Court of Appeals for the Fifth Circuit. ECF 27.

## BACKGROUND

On February 28, 2025, the Texas A&M System Board of Regents met and adopted a resolution banning "drag show" performances that violated certain and specific parameters (Resolution). ECF 21.2. In response to the Resolution, Texas A&M University cancelled Plaintiff's event "Draggieland 2025," which was scheduled on-campus at the Rudder Theatre on March 27, 2025. Plaintiff immediately filed a complaint as well as a motion for preliminary injunction. ECF 1, 3.

On March 24, 2025, this Court granted a preliminary injunction so that the event could proceed. ECF 24 & 25. With Draggieland 2025 having passed, on March 28, 2025, Defendants filed a motion to stay the preliminary injunction pending appeal. Plaintiff filed a response in opposition.

On April 24, 2025 Defendants filed an opposed motion to stay proceedings pending appeal, requesting a stay until the Fifth Circuit rules on *Spectrum WT v. Wendler*, No. 23-10994, or *Woodlands Pride, Inc. v. Paxton*, No. 23-20480. ECF 35.

## ARGUMENT

"Lifting the preliminary injunction now would make no difference: Draggieland 2025 has already taken place." Plaintiff's Response, ECF 34 at 9. There is no harm that could befall Plaintiffs if a stay is entered, but harm to Defendants' sovereign interests and risks to Defendants' access to federal funding will continue to exist as long as the preliminary injunction applies.

Moreover, a stay is in the interest of judicial economy, as two already-pending cases before the Fifth Circuit Court of Appeals are likely to have a profound effect on resolution of this case. Finally, Defendants' strong showing of likely success on the merits motivates entry of a stay.

## I. The balance of equities favors a stay.

"The traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest. These factors merge when the Government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

### A. Plaintiff concedes it will not be injured by a stay.

Lifting the stay will not affect any interests of the University's students, because for them nothing will have changed. Draggieland is a once-yearly event that will not reoccur until Spring 2026. ECF 1 at ¶ 127. Plaintiff admits that it will host no drag events in the coming months. ECF 34 at 9. To the extent that they wish to, students will attend Plaintiff's other regularly scheduled planned events—such as its town halls, mentorship socials, Winter Wonderland, and other programs—as normal, as all parties agree that those events are not at issue. ECF 21.3, ¶ 6.

Nonetheless, Plaintiff argues that staying the injunction will create a "chilling effect" on campus. ECF 34 at 10. It is unclear how this "effect" will occur. There is nothing in the record indicating that other events would be altered by staying the injunction. And Plaintiff even freely admits that no harm would come from a stay: "[l]ifting the preliminary injunction now would make no difference: Draggieland 2025 has already taken place." Plaintiff's Response, ECF 34 at 9. With the event at the center of Plaintiff's complaint now past, and no event likely to conflict with the Resolution scheduled for almost a calendar year, there is now no imminent harm that could befall Plaintiff if a stay is entered.

### B. An unnecessary injunction harms Texas's sovereignty.

Defendants, on the other hand, are Regents who act on behalf of a state institution that is irreparably harmed each moment that the injunction is in effect. Texas is one state within the "union of states, equal in power, dignity, and authority, each competent to exert that residuum of sovereignty not delegated to the United States by the Constitution itself." *Coyle v. Smith*, 221 U.S.

559, 567 (1911). An injunction that infringes upon Texas A&M's ability to set its own standards of conduct and achieve its own institutional educational mission is an ongoing harm to the sovereignty of Texas. Because the Plaintiff concedes that entering a stay will not worsen its alleged Constitutional injury, and because the absence of a stay perpetuates an injury to the State of Texas, it is appropriate for this court to grant Defendants' motion.

**C. Defendants have a continuing interest in complying with federal antidiscrimination law.**

If the injury to Texas's sovereign interests were not enough, Defendants also have a strong interest in complying with federal antidiscrimination policy and avoiding the financial penalties associated with noncompliance. Defendants previously raised the potential harm that they might suffer at the hands of the federal government, should the drag shows on campus be found to violate federal antidiscrimination law. ECF 20 at 18–19; ECF 21.12. Since then, the federal government has cut $1 billion of funding to Cornell University and $790 million in funding to Northwestern University, due to potential violations of federal antidiscrimination law.[1] Additionally, the Trump administration has acted to remove billions of dollars in federal funding, as well as accreditation, from Harvard University because of allegations of discrimination.[2] The potential harm to Texas A&M is real and present.

This Court found that it is unlikely that President Trump's Executive Order 14168 on gender ideology would be offended by Draggieland. ECF 24 at 16–17. It remains true that the Court's reasoning and Trump Administration's reasoning may not arrive at the same conclusion. Given that the Plaintiff will suffer no harm from the staying the injunction, *see infra* at I.A. & I.B., while the Defendants *could* suffer harm, the balance of the equites weigh in favor of staying the injunction.

---

[1] Alan Blinder, *Trump Has Targeted These Universities. Why?*, The New York Times (Apr. 15, 2025), http://www.nytimes.com/trump-university-college.html.

[2] John Yoo & Robert J. Delahunty, *Trump Could Have a Strong Case to Revoke Harvard's Tax-Exempt Status*, National Review (April 21, 2025), https://www.nationalreview.com/2025/04/trump-could-have-a-strong-case-to-revoke-harvards-tax-exempt-status/.

**D. Judicial economy supports a stay.**

The Fifth Circuit will likely have issued its opinions in two highly relevant cases prior to Draggieland 2026. *Spectrum WT v. Wendler*, 693 F.Supp.3d 689 (N.D. Tex. 2023) was argued before the Fifth Circuit on April 24, 2024. Draggieland 2026 would be nearly two years after argument. *Woodlands Pride, Inc. v. Paxton*, 694 F.Supp.3d 820 (S.D. Tex. 2023) was argued before the Fifth Circuit on October 24, 2024. Draggieland 2026 would be a year and a half after argument. Although the parties have waited a substantial time already for the decisions, it is improbable, if not implausible, that the opinions will not issue prior to Draggieland 2026.

Both *Spectrum* and *Woodlands Pride* contain a drag element and will be cases of first impression at the Fifth Circuit. *Spectrum* presents nearly identical issues as this case: a LGBTQ+ student group, on a Texas A&M campus, wishing to hold a charity drag show on campus, that was prohibited from doing so by an unenjoined policy of the University. *Woodlands Pride* was a case involving Senate Bill 12, which prohibited drag performances in certain situations, and allegedly constituted a "Drag Ban." While *Woodlands Pride* was not a university case, it contains several issues that impact arguments here. See ECF 35 at 2-5.

Given the similarities between the pending cases and this case, that both *Spectrum* and *Woodlands Pride* will be decided in this Court's court of appeals, and that one or both of those decisions will likely be issued before this Court decides this case, the Fifth Circuit's decisions are likely to be determinative here. A stay would prevent duplication of effort and permit parties to litigate this case on grounds of settled law.

**II. Defendants' have made a "strong showing" of success on the merits.**

**A. Defendants are entitled to intermediate scrutiny because the Resolution applies only to limited public forums and was viewpoint neutral.**

The Resolution explicitly reaffirms Texas A&M's longstanding policy that Rudder Theatre—as a special event venue under A&M's institutional rules—is a limited public forum. Plaintiff casts the Resolution as an attempt to "reclassify" Rudder Theatre and as a departure from existing norms. ECF 34 at 4–5. But as Defendants have maintained for the entire duration of this

proceeding, Rudder Theatre has been treated as a limited public forum since well before the Resolution; the Resolution merely officially classified it as such. ECF 20 Part I.E. Texas A&M's enduring classification of some parts of campus—of which Rudder Theatre is not one—as "reservable designated public forums" indicates that Texas A&M has long understood how to create a designated public forum and has long declined to make Rudder Theatre such a forum. Tex. A&M Pol'y 08.99.99.M1 § 2.1.

Further, the Resolution underscores that Defendants have no desire to interfere with Plaintiff's First Amendment rights, as those rights are properly understood. In fact, immediately after the adoption of the Resolution, A&M students hosted a Day of Drag protest in one of the campus's designated public forums. This protest was met with not a whisper of institutional opposition and was clearly not in tension with the text and intent of the Resolution. Why? Because that protest was speech, was not lewd conduct within the meaning of the Resolution, and took place in a designated public forum where Defendants claim no authority—and even evince no desire—to limit speech or expressive conduct. Plaintiff's theory that the Resolution is a prohibition on *all* drag events is plainly contradicted by the Day of Drag protest proceeding without any interruption by the University immediately after Resolution was promulgated.

**B. The Resolution is narrowly tailored to protect speech while furthering a compelling government interest.**

The Court agreed that "providing an effective learning environment and complying with federal antidiscrimination are compelling governmental interests." ECF 24 at 21. Defendants maintain that the Resolution's five-factor test—which by its operation bars only conduct that is "sexualized, vulgar, or lewd" and demeans women—is narrowly tailored. Resolution, ECF 21.2 at 1. On March 6, 2025, students gathered in public to stage a "Day of Drag" protest against the Resolution. ECF 21.5. Some participants were males dressed in women's clothing and makeup. ECF 21.10. This protest went forward without friction from the administration or conflict with the Resolution because it was held at a designated public forum (*supra* at III.B) and did not involve sexualized, vulgar or lewd conduct demeaning to women. ECF 21.3. That the Resolution does

nothing to interfere with students' right to wear drag while protesting that very Resolution underscores that the Resolution is narrowly tailored to protect First Amendment rights. It remains possible, though untried by Plaintiff, to hold a drag event on campus within the strictures of the Resolution.

**C. The Resolution is not an impermissible prior restraint.**

Plaintiff asserts that Defendants' "refus[al] to address how [the Resolution] constitutes a prior restraint" amounts to waiver of the argument and tacit assent to strict scrutiny. Plaintiffs are correct that Defendants do not contest that the Resolution is a prior restraint, simply because such an argument is not worth making. Any policy must necessarily apply to future behavior: because time is linear, there can be no such thing as a past restraint, and no punitive consequence can justly be attached to an act that was not prohibited at the time of its commission. *See Calder v. Bull*, 3 U.S. 386, 388, 1 L. Ed. 648 (1798) ("This fundamental principle flows from the very nature of our free Republican governments, that no man should be compelled to do what the laws do not require; nor to refrain from acts which the laws permit . . . [a] Legislature . . . cannot change innocence into guilt; or punish innocence as a crime."). The relevant question in this case, then, is not whether Texas A&M's Resolution is a prior restraint, but rather whether it is an *unlawful* prior restraint that impermissibly infringes on protected speech. And Defendants have been abundantly diligent in answering that question in the negative. Defendants have, and continue to, maintain that the Resolution is lawful because it is narrowly tailored to only limit conduct (or, alternatively, only unprotected lewd speech), it applies only in limited public forums, it furthers an important governmental interest, and it is viewpoint neutral. *See supra* Part III.A–B; ECF 20 at 14–16; ECF 27 at 7–8.

## CONCLUSION

The Defendants respectfully request this Court stay the preliminary injunction pending appeal.

Dated April 25, 2025.

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

Respectfully submitted.

ZACHARY BERG
Special Counsel
Tex. State Bar No. 24107706
SDTX No. 3481711

*/s/Mark A. Csoros*
MARK A. CSOROS
Assistant Attorney General
Texas State Bar No. 24142814
SDTX No. 3896171

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Zachary.Berg@oag.texas.gov
Mark.Csoros@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on April 25, 2025 and that all counsel of record were served by CM/ECF.

*/s/Mark A. Csoros*
MARK A. CSOROS